# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DELPHI PETROLEUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. N12C-02-302 FWW |
| v. | ) | |
| | ) | |
| MAGELLAN TERMINALS | ) | |
| HOLDINGS, L.P. | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 25, 2018
Decided: July 10, 2018

## DECISION ON REMAND

Marc S. Casarino, Esquire, White and Williams, LLP, 824 N. Market St., Suite 902, P.O. Box 709, Wilmington, Delaware, 19899-0709; Peter J. Mooney, Esquire, White and Williams, LLP, 1650 Market Street, One Liberty Place, Suite 1800, Philadelphia, Pennsylvania 19103-7395, Attorneys for Plaintiff.

Herbert W. Mondros, Esquire, Margolis Edelstein, 300 Delaware Avenue, Suite 800, Wilmington, Delaware 19801; Amelia A. Fogleman, Esquire and Erin K. Dailey, Esquire, GableGotwals, 1100 ONEOK Plaza, 100 West Fifth Street, Tulsa, Oklahoma 74103-4217, Attorneys for Defendant.

**WHARTON, J.**

This 10th day of July, 2018, on remand from the Delaware Supreme Court, upon consideration of the parties' submissions on the issue of the proper pre-judgment interest calculation and the record in this matter, it appears to the Court that:

1.      Plaintiff Delphi Petroleum, Inc. ("Delphi") brought this action against Defendant Magellan Terminals Holdings L.P. ("Magellan") in February 2012 alleging breach of contract and fraud arising out of the operation of a marine terminal located at the Port of Wilmington in Delaware.  After the parties engaged in extensive discovery, motion practice and amendments of the pleadings, the matter was tried by the Court without a jury from July 27 through July 31, 2015. Following lengthy post-trial submissions by the parties, the Court issued its Decision After Trial ("Decision") on June 27, 2016.[1]  After further litigation in this court after trial, Delphi appealed and Magellan cross-appealed.  The Supreme Court addressed fourteen issues on appeal, affirming all but two of this Court's decisions.[2]  On one issue it reversed an award of $2,500 to Delphi on a fraud claim against Magellan.[3]  On another issue it reversed and remanded the matter to this Court for a recalibration of either the start date or the amount of pre-judgment

---

[1] D.I. 260.
[2] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.,* 2017 WL 6371162 (Del. Dec. 12, 2017).
[3] *Id.*

2

interest to which Delphi is entitled as a result of Magellan overcharging it for fuel for heating oil storage tanks.[4]

2. On remand, the Court conducted a teleconference on January 23, 2018 to determine if the parties could come to an agreement on the remanded issue, or, if they could not reach an agreement, how they suggested the Court proceed to resolve the issue.[5] The parties were unable to reach an agreement on either the amount of pre-judgment interest or how to proceed.[6] The Court then conducted another teleconference on February 20, 2018.[7] At that time, the Court ordered the parties to file simultaneous submissions setting out their pre-judgment interest calculations.[8] Delphi's submission on March 5, 2018 claimed it was due additional pre-judgment interest as of June 27, 2016 of $64,863.29, post-judgment interest as of March 5, 2018 of $124,431.70, and a total of damages and interest as of March 5, 2018 of $1,212,869.71, with a *per diem* interest of $202.00.[9] For its part, Magellan proposed a pre-judgment interest calculation of $325,064.93.[10] Delphi then sought leave to file a brief in response to Magellan's proposed calculation which included a Memorandum in Response to Magellan's Proposed Interest Calculations, which in

---

[4] *Id.*
[5] D.I. 284.
[6] D.I. 285, 286.
[7] D.I. 287.
[8] *Id.*
[9] D.I. 288.
[10] D.I. 289.

3

turn, included a Certification of Donald Dahl, a certified public accountant, and his detailed calculations.[11] Magellan responded, opposing Delphi's request, but modified its calculation to $442,833.92 in light of Mr. Dahl's calculations, and suggested the parties were now in agreement as to the correct amount of interest.[12] Delphi filed a reply to Magellan's response denying the parties were in agreement.[13] The Court held yet another teleconference at which it denied Delphi's request for leave to file a response to Magellan's calculation, but permitted counsel for Delphi to file a letter stating the total amount of prejudgment interest Delphi was claiming.[14] Delphi submitted a new interest calculation of $840,145.63 as of March 5, 2018, plus a *per diem* of $181.90 thereafter.[15] Magellan then submitted an unsolicited letter reaffirming its claim that the amount it owed was $442,833.92.[16] The Court then deemed the matter under submission and directed the parties not to submit further argument without leave of the Court.[17]

3. Perhaps a good place to start is with the Court's Decision on the tank heating issue. The gravamen of Delphi's claim was that Magellan overbilled Delphi by at least $580,000 between 2005 and 2011 for the fuel consumed to heat Delphi's

---

[11] D.I. 292.
[12] *Id.*
[13] D.I. 294.
[14] D.I. 296.
[15] D.I. 298.
[16] D.I. 299.
[17] D.I. 300, 301.

4

oil tanks.[18] Under terms of the contract between the parties, Magellan was required to use gauges to measure the amount of oil it used to heat the storage tanks when it billed Delphi.[19] Instead, Magellan used less accurate meters to make those measurements between 2005 and 2011, resulting in Magellan overbilling Delphi for that time period.[20] Magellan calculated the overbilling for the years 2007 through 2011 to be $421,603.06, which it refunded to Delphi on July 24, 2015.[21] Magellan had no data for the years 2005 and 2006, however.[22] Using the same method Magellan used to calculate the overbilling for the 2007 through 2011 period, Delphi claimed it was owed $27,396.00 for 2005 and $87,151.00 for 2006, for a total of $114,547.00.[23] The Court found Delphi's approach reasonable and found for Delphi in that amount.[24] The Court determined that Delphi was due interest on the total overbilling from 2005 to 2011 of $536,150.00 at the statutory rate beginning on September 25, 2013.[25] The Court chose that date because that is when it understood that the running balance of payments between Delphi and Magellan favored Delphi as a result of its payment of $1,085,466.42 to Magellan on that date.[26]

---

[18] Decision after Trial at 8, D.I. 260.
[19] Id. at 56-57.
[20] Id.
[21] Id. at 57.
[22] Id.
[23] Id. at 58.
[24] Id. at 59.
[25] Id.
[26] Id. 52.

5

4. In one of the many issues Delphi advanced in its unsuccessful motion after the Court released its Decision, Delphi argued that the Court selected an incorrect start date for the pre-judgment interest Delphi was owed.[27] On appeal, the Supreme Court agreed with Delphi that the date that the interest overcharges ran was from the date Delphi paid the overcharges, not September 25, 2013, and remanded the matter to this Court to "determine the dates from which interest runs or the amount of such interest."[28]

5. In its original submission on remand, Delphi purports to limit its claim to those periods of time when Magellan held more of Delphi's money than Delphi owed it.[29] Delphi further purports that its calculation reflects the day by day running balance between the parties, accumulates interest only when the amount owed Delphi exceeds the amount Delphi owed Magellan, applies the statutory rate of interest, and credits Magellan with the contractual 18% interest rate when what Delphi owed Magellan exceed what Magellan owed Delphi.[30] In support of its calculation, Delphi provided a spread sheet tracking, invoices, payments, running balances and other data from December 8, 2010 to March 8, 2018, the date Delphi submitted its calculation;[31] copies of Delphi's checks confirming the dates it paid

---

[27] D.I. 268 at 35-39.
[28] *Delphi Petroleum, Inc.* at *2.
[29] D.I. 288 at 4.
[30] *Id.*
[31] *Id.* at Ex. A.

the overbilled heating charges,[32] and various documents reflecting the due dates of Magellan's invoices.[33]

6.      For its part, Magellan submitted a calculation purporting to show that it owed Delphi $325,064.93 in pre-judgment interest.[34] Magellan purports to detail the amount of interest generated by each overbill from September 2005 through December 2010.[35] Magellan explained its methodology as dividing the overbills for each year by the number of months in which overbills occurred in that year, applying the statutory prejudgment interest rate to the amount of the overbill from the first date of each month through the date of the judgment.[36] Fluctuations in the statutory rate between the overbill and the judgment dates were accounted for by applying the interest rate that was in effect on each date during the pre-judgment interest period.[37] Magellan believes that Delphi's calculation is in error because it includes amounts unrelated to heating overbills.[38]

7.      In its Motion for Leave to File a Brief in Response to Magellan's Proposed Prejudgment Interest Calculation, Delphi alleged, *inter alia,* that Magellan's proposed calculation improperly failed to maintain a fixed rate of pre-

---

[32] *Id.* at Ex. B.
[33] *Id.* at Ex. C.
[34] D.I. 289.
[35] *Id.* at Ex. A.
[36] *Id.* at Ex. B.
[37] *Id.*
[38] *Id.* at 6-8.

judgment interest, but instead incorporated fluctuations in the Federal Reserve Discount Rate over time.[39] Delphi attached its proposed brief to its motion, The proposed brief itself contained as an exhibit a calculation by Donald Dahl, the certified public accountant, recalculating Magellan's proposal using a fixed statutory interest rate.[40] Mr. Dahl's recalculation of Magellan's proposal yielded a figure of $442,833.92 for pre-judgment interest due Delphi based on Magellan's methodology.[41] Magellan agreed that its original calculation, which used a variable statutory interest rate to calculate pre-judgment interest, was in error, and agreed that it should have proposed pre-judgment interest of $442,833.92.[42] Although it denied Delphi's motion to file a brief in response to Magellan's initial calculation, the Court permitted Delphi to submit a letter with its final request.[43] Magellan then submitted its final claim for pre- and post-judgment interest through March 5, 2018 of $840,145.63, plus $180.90 *per diem* thereafter, on April 24, 2018.[44]

8.      What appears to be in dispute is that Delphi has included pre-judgment interest on the Court's awards in its Decision on claims 8(f), (r), and (q) of the Second Amended Complaint in its calculation in addition to its claim for pre-

---

[39] D.I. 292 at 2.
[40] *Id.* at Ex. A, Ex.1.
[41] *Id.*
[42] D.I. 293.
[43] D.I. 296.
[44] D.I. 298.

judgment interest on its award on claim 8(u), the heating overcharges claim. Specifically, claim 8(f) resulted in an award to Delphi of $40,456.96 as a result of Magellan overbilling Delphi for tank cleaning.[45] Claim 8(q) resulted in an award of $15,500 as a result of Magellan improperly transferring higher sulfur content oil into a tank containing lower sulfur content oil.[46] Claim 8(r) resulted in an award of $79,987.77 as a result of Delphi making excess payments on inaccurate invoices.[47] Only claim 8(u), in the amount of $114,547.00, concerned overbillings for fuel consumed heating Delphi's oil tanks.[48] Magellan's position is that the inclusion of awards for claims 8(f), (q) and (r) are outside the scope of the Remand Order in that they are not related to the heating overbills.[49] Magellan is correct. In its Order, the Supreme Court said:

> We agree with Delphi that interest on the overcharges for fuel for heating tanks runs from the date Delphi paid such overcharges, not from September 25, 2013. We remand the case to the Superior Court for any further proceedings necessary to determine the dates from which interest runs or the amount of such interest.[50]

The matter was remanded to this Court to determine either the dates when pre-judgment interest runs or the amount of that interest for *tank heating overbillings,*

---

[45] *Id.* at 6.
[46] *Id.* at 7.
[47] *Id.*
[48] *Id.* at 8.
[49] D.I. 289 at 6-8; D.I. 293 at 3; D.I. 299.
[50] *Delphi Petroleum, Inc.* at *2.

not for other claims. To the extent that Delphi seeks pre-judgment interest on other awards, interest claims on those awards are not before the Court.[51] The Court finds that the calculation tendered by Mr. Dahl, and agreed to by Magellan, does just that – it identifies the dates of the overbillings, applies the statutory rates of interest appropriate to those overbillings and determines a total amount of pre-judgment interest as of the date of judgment. That is what the Remand Order directed this Court to do.

9.     Accordingly, Magellan is ordered to pay Delphi the sum of $442,883.92 in pre-judgment interest as of the date of judgment.

**IT IS SO ORDERED.**

Ferris W. Wharton, Judge

---

[51] The Court does not read n. 7 at *5 of the Supreme Court's Order as an open invitation to reconsider all of this Court's earlier rulings on interest. Instead, the Supreme Court recommended only that this Court review its decision to require Magellan to refund to Delphi a portion of the interest it collected on invoices Delphi failed to pay on time between 2010 and 2013 in light of the fact that little, if any, of the interest this Court ordered refunded was derived from heating overcharges. It appears to this Court that the Supreme Court was suggesting the *Magellan* might be entitled to some relief from this Court's earlier decision on this point, not Delphi. Inasmuch as the Court is adopting Magellan's calculation, it deems the issue moot.